**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

STATE OF UTAH, STATE OF TEXAS, STATE OF ALABAMA, STATE OF ARKANSAS, STATE OF IDAHO, STATE OF INDIANA, STATE OF IOWA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MISSOURI, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF SOUTH CAROLINA, STATE OF TENNESSEE, STATE OF WEST VIRGINIA, and NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,

*Plaintiffs,*

v.

SCOTT TURNER, in his official capacity as Secretary of Housing and Urban Development; U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture; U.S. DEPARTMENT OF AGRICULTURE,

*Defendants*.

Case No. 6:25-cv-00001-JDK

**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR A STAY OF PROCEEDINGS, OR IN THE ALTERNATIVE FOR MODIFICATION OF THE BRIEFING SCHEDULE**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

STATEMENT OF ISSUES ........ 2

BACKGROUND ........ 2

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. PLAINTIFFS' CLAIMS ARE NO LONGER RIPE IN LIGHT OF THE AGENCIES' RECONSIDERATION OF THE FINAL DETERMINATION. ........ 5

A. Plaintiffs' Claims are Not Fit for Judicial Decision ........ 6

B. Plaintiffs Have Not Established Hardship ........ 8

II. IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED ........ 9

III. IN THE ALTERNATIVE, THE SCHEDULE SHOULD BE MODIFIED. ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967)........................................ 6, 8

*Choice Inc. of Tex. v. Greenstein*,
691 F.3d 710 (5th Cir. 2012)........................................ 5, 6, 8

*Ciba-Geigy Corp. v. EPA*,
801 F.2d 430 (D.C. Cir. 1986)........................................ 6

*Consensys Software, Inc. v. Sec. & Exch. Comm'n*,
749 F. Supp. 3d 736 (N.D. Tex. 2024)........................................ 9

*Daily Wire, LLC v. Dep't of State*,
23-cv-609 (E.D. Tex. 2025)........................................ 10

*Doe v. Bush*,
323 F.3d 133 (1st Cir. 2003)........................................ 7

*Ethyl Corp. v. Browner*,
989 F.2d 522 (D.C. Cir. 1993)........................................ 9

*Fed. Commc'ns Comm'n v. Consumers' Rsch.*,
145 S. Ct. 587 (2024)........................................ 10

*Huawei Techs. USA, Inc. v. FCC*,
2 F.4th 421 (5th Cir. 2021)........................................ 6

*Lopez v. City of Hous.*,
617 F.3d 336 (5th Cir. 2010)........................................ 6, 8, 9

*Manufactured Hous. Inst. v. U.S. Dep't of Energy*,
No. 1:23-cv-174-DAE, 2024 WL 3337376 (W.D. Tex. May 1, 2024)........................................ 7

*Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior*,
538 U.S. 803 (2003)........................................ 7

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
523 U.S. 726 (1998)........................................ 5, 8

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008)........................................ 6, 8

*Roman Cath. Diocese of Dall. v. Sebelius*,
927 F. Supp. 2d 406 (N.D. Tex. 2013) ........ 7, 8

*Texas v. United States*,
497 F.3d 491 (5th Cir. 2007) ........ 8

*Trump v. New York*,
529 U.S. 125 (2020) ........ 7

*Walmart Inc. v. U.S. Dep't of Just.*,
21 F.4th 300 (5th Cir. 2021) ........ 5, 6, 8, 9

**Constitutional Provisions**

U.S. Const. art. III, § 2 ........ 5

**Statutes**

42 U.S.C. § 12709 ........ 2, 3

**Rules**

Federal Rule of Civil Procedure 1 ........ 8

Federal Rule of Civil Procedure 12(b)(1) ........ 5

**Regulations**

80 Fed. Reg. 25,901 (May 6, 2015) ........ 3

89 Fed. Reg. 33,112 (Apr. 26, 2024) ........ 3, 5

90 Fed. Reg. 11,622 (Mar. 10, 2025) ........ 1, 4, 5

90 Fed. Reg. 14,775 (Apr. 4, 2025) ........ 1, 5

## INTRODUCTION

On January 2, 2025, Plaintiffs brought this challenge to a final determination issued by the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of Agriculture ("USDA") in April 2024, which adopted updated energy efficiency standards for several categories of housing. That challenge was rendered unripe on March 10, 2025, when HUD published a notice in the Federal Register that extended all forthcoming compliance deadlines by six months and that noted that the final determination would be reevaluated during this period. *See* Final Determination: Adoption of Energy Efficiency Standards for New Construction of HUD- and USDA-Financed Housing; Extension of HUD Compliance Dates, 90 Fed. Reg. 11,622 (Mar. 10, 2025) (noting that the extension was needed in part to "provide additional time for the administration to review questions of fact, law and policy supporting the Final Determination") (attached as Exhibit A); *see also* Final Determination: Adoption of Energy Efficiency Standards for New Construction of HUD- and USDA-Financed Housing; Extension of USDA Compliance Dates, 90 Fed. Reg. 14,775 (April 4, 2025) (issuing an extension notice from USDA) (attached as Exhibit B). The vast majority of compliance deadlines have thereby been delayed until late November 2025 or the spring of 2026. A small handful of deadlines have already passed, but these deadlines appear to be either not at issue in this case or only relevant to the State Plaintiffs. For these deadlines, HUD's notice directed program participants to contact the agency if they had difficulty meeting the deadlines, 90 Fed. Reg. 11,622—a reference to the agencies' ability to grant extensions or waivers to those subject to the final determination.

The upshot is that Plaintiffs' claims are premature. They could be completely resolved by the agencies themselves—such as through a revision or revocation of the final determination, or through a waiver issued to the Plaintiffs—without a need for the parties and the Court to expend

any further time or resources in litigation. Plaintiffs would suffer no hardship by waiting for the agencies to complete their review of the final determination, since the pending deadlines have been extended and since there is no credible threat of the regulation being enforced against them. Because Plaintiffs' claims are unripe, the Court should dismiss this case for lack of jurisdiction.

Even if the Court did have jurisdiction, this litigation should be stayed. It makes no sense for the parties and the Court to plunge into merits briefing when the underlying issues are still being examined by the agencies. And if the Court were to find that neither dismissal nor a stay were warranted, it should at least modify the current briefing schedule. The current schedule provides for rapid-fire briefing, but it does not provide deadlines for the administrative record or for Defendants' reply brief. At a minimum, the briefing schedule should be extended and account for these deadlines.

## STATEMENT OF ISSUES

(1) Should the Complaint be dismissed for lack of subject-matter jurisdiction?

(2) If the Complaint is not dismissed, should the case be stayed?

(3) If the case is neither dismissed nor stayed, should the briefing schedule be modified?

## BACKGROUND

The final determination at issue stems from a statutory provision that authorized HUD and USDA to jointly establish energy efficiency standards for several categories of housing by September 30, 2006. 42 U.S.C. § 12709(a)(1). If the agencies did not issue standards by that deadline, the relevant standards would be supplied by reference to two energy codes created by private entities: the 2006 International Energy Conservation Code ("2006 IECC"), which applies to low-rise homes, and the American Society of Heating, Refrigerating, and Air-Conditioning

Engineers Standard 90.1-2004 ("ASHRAE Standard 90.1-2004"), which applies to multifamily high rises. *Id.* § 12709(b). If either of these two codes "are revised at any time," the revisions take effect if HUD and USDA have not issued their own amended standards within a year, so long as HUD and USDA determine that (1) "the revised codes do not negatively affect the availability or affordability of new construction" and (2) the Department of Energy has determined that the revised codes "would improve energy efficiency." *See id.* § 12709(c)-(d).

HUD and USDA have not issued their own energy efficiency standards under the statute, and the two privately created codes have been revised several times since 2007. In 2015, the agencies issued a final determination that concluded that the updated private codes did not negatively affect the availability or affordability of new construction, and that the updated codes should therefore take effect because the Department of Energy ("DOE") had also found that they would improve energy efficiency. *See* Final Affordability Determination—Energy Efficiency Standards, 80 Fed. Reg. 25,901 (May 6, 2015). In April 2024, the agencies issued a second final determination that concluded that subsequent revisions to the private codes should be adopted, since HUD, USDA, and DOE had made the requisite determinations regarding affordability, availability, and energy efficiency. *See* Final Determination: Adoption of Energy Efficiency Standards for New Construction of HUD- and USDA-Financed Housing, 89 Fed. Reg. 33,112 (Apr. 26, 2024).

Plaintiffs brought this challenge to the 2024 final determination in January 2025, shortly before the change in Administration. Compl., ECF No. 1. In the wake of the transition, Defendants sought a three-month extension to respond to the Complaint, to allow new leadership at the agencies and the Department of Justice to review the case. Defs.' Mot. for Extension, ECF No.

25. Defendants noted that an extension of compliance deadlines was forthcoming, and that Plaintiffs would accordingly suffer no discernible prejudice from allowing the agencies further time to consider the matter. *See id.* Plaintiffs opposed the requested extension. Without identifying any prejudice they would suffer by giving the agencies additional time to respond to the Complaint, Plaintiffs nonetheless highlighted that the agencies' extension had not yet been issued, and they argued that resolving the case on the merits would be preferable because it would prevent future administrations from enacting a similar regulation. *See* Pls.' Opp'n & Cross-Mot., ECF No. 28. Plaintiffs proposed a briefing schedule, which the Court adopted on March 7, 2025. *See* Order, ECF No. 30.

On March 10, 2025, HUD issued a notice extending the pending compliance deadlines in the final determination by six months. *See* 90 Fed. Reg. 11622. The notice stated that this extension was needed in part to "provide additional time for the administration to review questions of fact, law and policy supporting the Final Determination." *Id.* The notice also provided clarity on the deadline for recipients of the HOME Investment Partnerships Program ("HOME") and the Housing Trust Fund Program ("HTF"), which provide grants to states and localities that support the development of low-income housing—and are thereby only relevant to the State Plaintiffs. While this compliance deadline already passed in November 2024, HUD stated that any development that was supported by HOME or HTF and another funding source covered in the final determination would be subject to the later deadline corresponding to that second source. *See id.* Only developments covered by HOME or HTF but not covered by a second applicable funding source would be subject to the November 2024 deadline. *See id.* The notice further stated that those HOME or HTF recipients "who may have difficulty meeting compliance dates that have

already passed should contact HUD." *Id.*[1] USDA published its own extension notice on April 4, 2025. *See* 90 Fed. Reg. 14,775.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint where "the court lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (citation omitted). "Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714-15 & n.20 (5th Cir. 2012) (citing U.S. Const. art. III, § 2). "The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's 'case' or 'controversy' language.'" *Id.* at 715 (citation omitted). Plaintiffs bear the burden of establishing jurisdiction. *Id.* at 714.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE NO LONGER RIPE IN LIGHT OF THE AGENCIES' RECONSIDERATION OF THE FINAL DETERMINATION.

Now that the agencies have extended the compliance deadlines to permit time for a reconsideration of the final determination, Plaintiffs' claims are unripe and should be dismissed. "At its core, ripeness is a matter of timing," *Walmart*, 21 F.4th at 312, which serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

[1] The only other compliance deadline that has gone into effect concerns the Rental Assistance Demonstration ("RAD"), a program that provides capital for improvements to existing public housing and funding for housing voucher programs. As indicated in the final determination, the updated energy efficiency standards were adopted for RAD on July 27, 2023, in a separately published notice. *See* 89 Fed. Reg. at 33,181. RAD was not mentioned in the Complaint and does not appear to be at issue in this case.

726, 732-33 (1998) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). The ripeness doctrine also "'protect[s] . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* at 733 (quoting *Abbott Lab'ys*, 387 U.S. at 148-49). "[I]f a purported injury is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication." *Lopez v. City of Hous.*, 617 F.3d 336, 342 (5th Cir. 2010) (cleaned up). "For these reasons, a ripeness inquiry is often required when a party is seeking *pre-enforcement* review of a law or regulation," as Plaintiffs seek here. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008).

To determine whether a case is ripe for adjudication, courts evaluate (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Walmart*, 21 F.4th at 311 (quoting *Abbott Lab'ys*, 387 U.S. at 149). Both prongs must be established for the action to be ripe. *See Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 435 n.30 (5th Cir. 2021); *Choice Inc. of Tex.*, 691 F.3d at 718. Here, Plaintiffs fail to establish either of them.

**A. Plaintiffs' Claims are Not Fit for Judicial Decision**

"[I]n the context of pre-enforcement agency action there are several established factors" courts must consider when evaluating the "fitness for decision" prong, "including 'whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *Walmart*, 21 F.4th at 311 (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986)). "Failure on even one of the three prongs can render a case unfit for judicial review." *Id.* (citing *Nat'l Park Hospitality*

*Ass'n v. U.S. Dep't of Interior*, 538 U.S. 803, 812 (2003)).

While Plaintiffs' claims present purely legal issues, they are not fit for judicial decision because "allowing more time for development of events would significantly advance [the Court's] ability to deal with the legal issues presented or aid [the Court] in their resolution." *Roman Cath. Diocese of Dall. v. Sebelius*, 927 F. Supp. 2d 406, 425 (N.D. Tex. 2013) (quoting *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003)); *see also Nat'l Park Hosp. Ass'n*, 538 U.S. at 812. The agencies are still evaluating whether to revise or revoke the final determination. And even if the final determination remained in place, Plaintiffs are free to request a waiver of applicable compliance deadlines. A revision, revocation, or waiver of the final determination could obviate the need for the parties and the Court to spend any further time or resources on litigation. It is only if the agencies decide to proceed with implementing and enforcing the final determination that litigation would be necessary. The case is accordingly unripe, since it is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted); *see also Manufactured Hous. Inst. v. U.S. Dep't of Energy*, No. 1:23-cv-174-DAE, 2024 WL 3337376, at *3 (W.D. Tex. May 1, 2024) (indicating that a case would not be ripe if the agency had sought to "delay the compliance deadline to reconsider the [challenged] standards themselves").

In their opposition to Defendants' requested extension, Plaintiffs offered no clear rationale for why this case had to proceed into immediate briefing. The most specific point they offered is that "resolution of this matter on the merits may make the delay [of the compliance deadlines] permanent," thereby "precluding similar unlawful regulatory actions in the future." Pls.' Opp'n & Cross-Mot. at 3. But this argument only highlights that the case is unripe. It is a request for the

Court to address a legal issue that may not need to be addressed, on the presumption that a decision on the merits could guard against a regulation being adopted at some unknown point in the future. Article III does not permit cases to proceed on this kind of hypothetical basis. *See, e.g., Lopez*, 617 F.3d at 341.

**B. Plaintiffs Have Not Established Hardship**

"The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n*, 523 U.S. at 734); *see also Choice Inc. of Tex.*, 691 F.3d at 715. But "to constitute a hardship, the impact of the [challenged] regulations must be 'sufficiently direct,' resulting in an 'immediate and significant change in the plaintiffs' conduct.'" *Roman Cath. Diocese of Dall.*, 927 F. Supp. 2d at 426 (quoting *Abbott Lab'ys*, 387 U.S. at 152-53); *see also Roark & Hardee LP*, 522 F.3d at 545. In a pre-enforcement context, courts also consider whether there is a "clear or credible threat" of enforcement. *Walmart*, 21 F.4th at 313.

Given the extension of pending compliance deadlines, Plaintiffs will suffer no apparent hardship by waiting for the agencies to complete their review of the final determination. Even after Defendants made this point in their prior motion, Plaintiffs provided no clear reason why they would be harmed by a temporary delay, aside from a generalized plea for speed. *See* Opp'n & Cross-Mot. at 2-3 (citing Federal Rule of Civil Procedure 1's statement that the Federal Rules should be construed to secure "the just, speedy and inexpensive determination" of cases, and stating that "[j]ustice delayed is justice denied"). But those generalizations are not hardships. If

they were, then this aspect of the ripeness analysis would be meaningless, since every plaintiff could similarly claim that delay necessarily ensues when cases are dismissed as unripe.

In addition, there is no "clear or credible threat" of enforcement that would support a finding of hardship here. *Walmart*, 21 F.4th at 313. Plaintiffs have not asserted in their Complaint that they have been subject to an enforcement proceeding, nor have they provided a basis to suspect that one is imminent. And the notices that have been issued over the past month further undercut that possibility. HUD's notice specifically notes that the final determination is being reevaluated. It also relays that participants who may face difficulty in meeting the small number of compliance deadlines that have already passed should contact HUD—an indication that such participants may be able to acquire a further extension or waiver.[2] In this context, "there is 'no clear or credible threat'" of impending enforcement, so "there is little to no hardship imposed on Plaintiff[s] from this Court's withholding of judicial review." *Consensys Software, Inc. v. Sec. & Exch. Comm'n*, 749 F. Supp. 3d 736, 743 (N.D. Tex. 2024) (quoting *Walmart*, 21 F.4th at 312-13).

Since Plaintiffs' claims are "abstract or hypothetical," they are unripe and should be dismissed. *Lopez*, 617 F.3d at 341.

## II. IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED.

If the Court finds that the case should not be dismissed, it should "hold the case in abeyance pending reconsideration by the agency." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 n.3 (D.C. Cir. 1993) (citation omitted). Stays are routinely granted in this context, in which a new administration

[2] As indicated above, the only compliance deadlines that have already passed and that appear to be at issue in this case are those pertaining to HOME and HTF funds, which would only be potentially relevant to the State Plaintiffs since these programs are for states and localities. The State Plaintiffs cannot establish a clear or credible threat of enforcement regarding these deadlines.

is reevaluating prior policies, and they are often unopposed. *See, e.g., Daily Wire, LLC v. Dep't of State*, 6:23-cv-609 (E.D. Tex. 2025) (Kernodle, J.) (ECF Nos. 102, 103) (granting a joint motion for a stay to give new leadership time to consider the case).

In addition to the need for further time to consider the final determination, a stay is particularly warranted here because it would permit the parties and the Court to consider a forthcoming Supreme Court decision in a case that involves a claim under the private nondelegation doctrine—one of the four claims asserted here. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.,* 145 S. Ct. 587 (2024) (granting certiorari in the case, which was argued at the Supreme Court on March 26, 2025). Under the current briefing schedule, summary judgment briefing would be completed by June 9, 2025. That timeline raises the distinct possibility that the parties would have to submit a second round of briefing regarding the impact of a subsequently issued Supreme Court opinion on one of the main claims at issue. A single round of briefing may well be unnecessary in this case, which only underscores the logic of dismissal or a stay.

## III. IN THE ALTERNATIVE, THE SCHEDULE SHOULD BE MODIFIED.

At the very least, the Court should modify the briefing schedule to address the absence of (1) a deadline for the agencies' administrative record and (2) a reply brief for Defendants' cross-motion for summary judgment. While Defendants have already compiled a segment of the administrative record, the agencies would need additional time to compile the remainder, given the voluminous material at issue and the significant number of additional matters that require the government's time and resources. Accordingly, if the Court were to find that neither dismissal nor a stay were warranted, then Defendants propose the following modified briefing schedule:

- Defendants will file an answer and a certified administrative record index by May 30, 2025

- Plaintiffs will file a motion for summary judgment by June 27, 2025
- Defendants will file an opposition and cross-motion for summary judgment by July 25, 2025
- Plaintiffs will file an opposition and reply by August 15, 2025
- Defendants will file a reply by September 5, 2025

Defendants offer this proposed schedule to ensure that the gaps in the current schedule are addressed even if the case proceeds to briefing. Yet, as indicated above, this would be the least sensible approach. A briefing schedule only makes sense once it is clear that there is an actual issue to brief.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this case for lack of jurisdiction. Alternatively, the Court should stay all proceedings in this litigation or modify the briefing schedule.

Dated: April 7, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

LESLEY FARBY
Deputy Branch Director

*/s/ Cameron Silverberg*
CAMERON SILVERBERG
Trial Attorney (D.C. Bar No. 1780628)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-9265
Fax: (202) 616-8470
Email: Cameron.D.Silverberg@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of this filing.

*/s/ Cameron Silverberg*
CAMERON SILVERBERG
Trial Attorney
U.S. Department of Justice